UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SETH GORDON,

|  | | |
|---|---|---|
| | Plaintiff, | **REPORT AND** |
| | | **RECOMMENDATION** |
| v. | | |
| | | 20-CV-696 |
| BRYTAVIOUS CHAMBERS; DANIEL | | (Gonzalez, J.) |
| HERNANDEZ; CREATE MUSIC GROUP, INC.; | | (Marutollo, M.J.) |
| TENTHOUSAND PROJECTS, LLC; S.C.U.M GANG | | |
| INC.; and REITLER KAILAS ROSENBLATT LLC, | | |
| | Defendants. | |

------------------------------------------------------------------X

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

Plaintiff Seth Gordon commenced this action against Defendants Brytavious Chambers; Daniel Hernandez; Create Music Group, Inc.; TenThousand Projects, LLC; and S.C.U.M. Gang Inc., seeking damages and injunctive relief under the Copyright Act, 17. U.S.C. § 101 *et. seq.*, for the alleged unauthorized use of Plaintiff's musical composition "Yung Gordon Intro." *See generally* Dkt. No. 1. Hernandez, also known as "Takashi 6ix9ine," is the only remaining defendant in this case.[1]

Currently pending before this Court, on a referral from the Honorable Hector M. Gonzalez, United States District Judge, is Plaintiff's motion for default judgment against Hernandez. *See* Dkt. No. 52; *see also* April 10, 2024 Dkt. Order. For the reasons set forth below, this Court respectfully recommends that Plaintiff's motion be denied, without prejudice to renew.

---

[1] The other named defendants have been dismissed. *See* Dkt. No. 20 (granting TenThousand Projects, LLC's motion to dismiss for lack of personal jurisdiction); Dkt. No. 29 (stipulating dismissal of claims against Create Music Group, Inc.); Dkt. No. 48 (dismissing claims against Brytavious Chambers); Nov. 16, 2023 Dkt. Order (dismissing claims against S.C.U.M. Gang Inc.).

I.      **Background**

    A.      **Factual Allegations**

The following facts are taken from the complaint, Plaintiff's motion, and the attachments filed in support of Plaintiff's motion; the facts are assumed to be true for the purposes of this motion.  *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (in light of defendant's default, a court is required to accept all of plaintiff's factual allegations as true and draw all reasonable inferences in plaintiff's favor); *BASF Corp. v. Original Fender Mender, Inc.*, No. 23-CV-2796 (HG) (JAM), 2023 WL 8853704, at *1 (E.D.N.Y. Dec. 22, 2023), *report and recommendation adopted*, Text Order (E.D.N.Y. Jan. 9, 2024).

According to Plaintiff, a "radio drop" is a short music clip that is played on the radio, often to promote the musician's affiliation with a radio station or promoter.  Dkt. No. 10 ¶ 11.  On or about November 15, 2016, Plaintiff alleges that he wrote and performed a nine-second radio drop, with the following lyrics: "Y'all already know, it be the boy Yung Gordon / You rockin' with Take Money Promotions / Ay Take Money Promotions / Give 'em that new sh-t, no fool sh-t/ Oh Yeah, let's go" (referred herein as the "Drop").  *Id.* ¶ 13.  Plaintiff claims that he wrote the Drop in response to a solicitation from non-party Take Money Promotions ("Take Money") for use in their programming.  *Id*. ¶ 10.  The Drop is characterized by an original use of language, voice, and intonation, particularly Plaintiff's characteristic "let's go" signoff.  *Id*. ¶ 14.

On November 16, 2016, Plaintiff emailed the Drop to Take Money with the subject line "yung gordon drop."  *Id.* ¶ 15.  Plaintiff claims that Take Money then shared the Drop with Hernandez."  *Id*. ¶ 16.

Almost two years later, on October 5, 2018, Hernandez released a song called "Stoopid" as a single on all major streaming platforms and as part of Hernandez's album "Dummy Boy."  *Id.*

¶ 17.  "Stoopid" purportedly opens with the Drop written and performed by Plaintiff.  *Id.*  Plaintiff confirmed this by looking at the song lyrics posted on Hernandez's official YouTube page—the first five lines of which match the lyrics of the Drop.  *Id.* ¶ 23.

"Stoopid" was an immediate success: it went certified platinum, indicating the equivalent of one million certified sales, and the song peaked at number 25 on the U.S. Billboard Hot 100.  *Id.* ¶ 26.  It also made several international top 100 lists.  *Id.* ¶¶ 26-29.  Hernandez released a music video for "Stoopid," which features him lip-synching the lyrics of the Drop in a Dubai amusement park.  *Id.* ¶ 22.  In 2021, Hernandez performed "Stoopid" live at the music festival Thrillerfest.  Dkt. No. 52-8 at 33:16-24.

Plaintiff contends that he did not authorize Hernandez to use the Drop in "Stoopid" or at any other point.  Dkt. No. 10 ¶ 24.  In fact, Hernandez never sought Plaintiff's permission to use it.  *Id.*  Plaintiff argues that Hernandez has collected, and continues to collect, substantial profits from the success of "Stoopid," including fees and royalties—none of which have been shared with Plaintiff.  *Id.* ¶ 30.

On January 1, 2019, Plaintiff registered the Drop with the United States Copyright Office under Registration Number SR0000838014.  *See* Dkt. No. 52–1, at 1.  The copyright is titled "Yung Gordon Intro."  *See id.*

B.    **Procedural History**

On February 7, 2020, Plaintiff filed a complaint against Defendants Brytavious Chambers; Daniel Hernandez; Create Music Group, Inc.; Tenthousand Projects, LLC; and S.C.U.M. Gang, Inc.  *See* Dkt. No. 1.  On May 5, 2020, Plaintiff filed an amended complaint.  *See* Dkt. No. 10.

On July 31, 2020, Hernandez, appearing through counsel, filed an answer to the amended complaint.  *See* Dkt. No. 16.  Hernandez asserts affirmative defenses for failure to state a claim,

fair use, independent creation, *de minimis* taking, lack of substantial similarity, lack of originality, laches, estoppel, lack of prior registration, copyright formalities, speculative and conjectural harm, and innocent infringement. *Id.*

On February 16, 2021, Hernandez's attorney requested a pre-motion conference to withdraw as counsel, claiming that there was a breakdown in the attorney-client relationship. *See* Dkt. No. 22. The Court granted the motion and held a pre-motion conference on February 23, 2021. *See* Feb. 22, 2021 Dkt. Order; Feb. 23, 2021 Minute Entry. At the pre-motion conference, the Court set a briefing schedule for Hernandez's attorney's motion to withdraw as counsel. *See id.*

On March 8, 2021, Hernandez's attorney filed his motion to withdraw. Dkt. Nos. 23–25. On March 31, 2021, the Court held a teleconference on the motion to withdraw. *See* Mar. 31, 2021 Minute Entry. Hernandez did not appear at the conference. *See id.* The Court granted the motion and permitted Hernandez to appear *pro se*. *See id.*

On June 29, 2021, another attorney, Robert S. Meloni, Esq., appeared in this case on behalf of Hernandez. *See* Dkt. No. 31. The parties proceeded with discovery until October 11, 2022, when Mr. Meloni filed a motion to withdraw as counsel. *See* Dkt. No. 43. Mr. Meloni represented that there had been a "total breakdown in communication between Mr. Hernandez" and his firm, which made "it impossible for the [f]irm to continue its representation because, among other things, we are unable to get Mr. Hernandez's input on discovery decisions or strategic decisions required during the course of the litigation." *See id.*, at 2. The Court ordered Hernandez to respond to the motion by October 28, 2022. *See* Oct. 19, 2022 Dkt. Order. Hernandez did not respond, and the Court scheduled a motion hearing for November 15, 2022. *See* Nov. 2, 2022 Dkt. Order.

Hernandez did not appear at the November 15, 2022 motion hearing. *See* Nov. 15, 2022 Minute Entry. The Court granted Mr. Meloni's motion and ordered him to provide the Court with contact information for Hernandez, his brother, and his former business manager. *See id.* The Court also certified discovery complete. *See id.*

On November 29, 2022, Plaintiff filed a letter requesting a pre-motion conference in advance of filing a motion for summary judgment pursuant to Fed. R. Civ. P. 56. *See* Dkt. No. 45. The Court subsequently set a briefing schedule, and on March 29, 2023, Plaintiff filed his motion for summary judgment, which Hernandez did not oppose. *See* Dkt. Nos. 47, 48. On November 7, 2023, the Court ordered Hernandez to advise the Court, by December 7, 2023, whether he intended to proceed *pro se* or to have his new counsel file a notice of appearance on the docket. *See* Nov. 7, 2023 Dkt. Order. The Court warned Hernandez that if he failed to comply, the Court would consider imposing sanctions, including entering a default judgment against him. *See id.*

Hernandez did not comply with the Court's order. As a result, on December 12, 2023, Plaintiff requested a certificate of default against Hernandez. *See* Dkt. No. 49. On December 18, 2023, the Clerk of Court granted the certificate of default, and the Court entered an order terminating Plaintiff's motion for summary judgment as moot and ordering Plaintiff to file a motion for default judgment. *See* Dkt. No. 50; *see also* Dec. 18, 2023 Dkt. Order.

On January 17, 2024, Plaintiff filed a motion for default judgment against Hernandez. Dkt. No. 51. On January 18, 2024, the Court ordered Plaintiff to file an amended motion that complies with Local Rules 7.1 and 55.2(b) and the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. § 3931. *See* Jan. 18, 2024 Dkt. Order. On January 22, 2024, Plaintiff filed an amended motion for default judgment, which consists of: (1) a memorandum of law; (2) a declaration from Plaintiff's counsel with exhibits, which include a copy of the amended complaint and certificate

of default; (3) a declaration purporting to establish compliance with the SCRA; (4) an affidavit of service showing that Plaintiff served Hernandez with the motion by mailing a copy to Hernandez's last known address and emailing a copy to Hernandez's brother; and (4) a proposed order for default judgment.  *See* Dkt. No. 52.

## II.   <u>Standard for Default Judgment</u>

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment."  *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011).  At the first step, the Clerk of Court enters a party's default after an affidavit or other evidence shows that the "party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend."  Fed. R. Civ. P. 55(a); *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV) (MMH), 2023 WL 6338666, at *3 (E.D.N.Y. Sept. 29, 2023) ("when a party uses an affidavit or other proof to show that a party has 'failed to plead or otherwise defend' against an action, the clerk shall enter a default." (citing Fed. R. Civ. P. 55(a)).  "If a claim is for 'a sum certain or a sum that can be made certain by computation,' the clerk can enter judgment."  *Id.* (citing Fed. R. Civ. P. 55(b)(1)).

At the second step, and "[i]n all other cases, the party must apply to the court for a default judgment."  *Id.* (citing Fed. R. Civ. P. 55(b)(2)).  To "enter or effectuate judgment" the Court is empowered to: "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."  Fed. R. Civ. P. 55(b)(2).

The Second Circuit "generally disfavor[s]" default judgment and has repeatedly expressed a "preference for resolving disputes on the merits."  *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).  Nevertheless, in evaluating a motion for default judgment, a court accepts as true the plaintiff's well-pleaded factual allegations, except those relating to damages.  *Greyhound*

*Exhibitgroup*, *Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974).  A plaintiff bears the burden of alleging "specific facts," rather than "mere labels and conclusions" or a "formulaic recitation of the elements," so that a court may infer a defendant's liability.  *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314 (SJ)(RER), 2015 WL 5561033, at *3 (E.D.N.Y. Sept. 1, 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), *report and recommendation adopted*, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015)).

The decision to grant or deny a default motion is "left to the sound discretion of a district court."  *Esquivel*, 2023 WL 6338666, at *3 (quoting *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999)).  A court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established."  *Chen v. Oceanica Chinese Rest., Inc.*, No. 13-CV-4623 (NGG)(PK), 2023 WL 2583856, at *7 (E.D.N.Y. Mar. 21, 2023) (quotations and citation omitted).  The Court may also "consider numerous factors, including whether plaintiff has been substantially prejudiced by the delay involved and whether the grounds for default are clearly established or in doubt."  *Franco v. Ideal Mortg. Bankers, Ltd.*, No. 07-CV-3956 (JS) (AKT), 2010 WL 3780972, at *2 (E.D.N.Y. Aug. 23, 2010) (cleaned up), *report and recommendation adopted*, 2010 WL 3780984 (E.D.N.Y. Sept. 17, 2010).  As the Second Circuit has observed, the Court is guided by the same factors which apply to a motion to set aside entry of a default, which include "whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment.  *See Enron Oil Corp.*, 10 F.3d at 96; *Franco*, 2010 WL 3780972, at *2 (listing factors).

7

### III.      Jurisdiction and Venue

The Court "must satisfy itself that it has subject matter and personal jurisdiction before rendering judgment against defendants." *Dumolo v. Dumolo*, No. 17-CV-7294 (KAM)(CLP), 2019 WL 1367751, at *4 (E.D.N.Y. Mar. 26, 2019); *see Covington Indus., Inc. v. Resintex A.G.*, 629 F.2d 730, 732 (2d Cir. 1980) ("A judgment entered against parties not subject to the personal jurisdiction of the rendering court is a nullity.").

### A.      Subject Matter Jurisdiction

The Court has original jurisdiction over Plaintiff's copyright claims pursuant to 28 U.S.C. § 1338(a), which states, "[th]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to . . . copyrights."

### B.      Personal Jurisdiction

"A court may not enter default judgment unless it has jurisdiction over the person of the party against whom the judgment is sought, which also means that he must have been effectively served with process." *BASF Corp.*, 2023 WL 8853704, at *5 (internal quotation marks and citation omitted). But because personal jurisdiction is a waivable defense, "a district court should not raise personal jurisdiction *sua sponte* when a defendant has appeared and consented, voluntarily or not, to the jurisdiction of the court." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011) (quoting *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010)); *see also* Fed. R. Civ. P. 12(h).

Here, Hernandez appeared in this action through counsel and filed an answer to the amended complaint. *See* Dkt. No. 16. Hernandez's answer raises several affirmative defenses, none of which are for lack of personal jursidiction. *See id.* He has therefore waived this defense and cannot later challenge a judgment entered by this Court on personal jurisdiction grounds. *See*

*Mickalis Pawn Shop, LLC*, 645 F.3d at 119 (holding that "defendants forfeited the defense of lack of personal jurisdiction and any other defenses they may have had by willfully abandoning their defense of the litigation."); *see also Copulsky v. Boruchow*, 545 F. Supp. 126 (E.D.N.Y. 1982) (holding that defendant waived personal jursidiction defense by failing to raise it in his answer).

      **C.**    **Venue**

"A civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2).

Here, Plaintiff contends that a substantial number of events giving rise to his copyright claim occurred in the Eastern District of New York, to wit: , the distributing, streaming, selling, downloading, performing, and otherwise exploiting of "Stoopid"; the mixing and recording of "Stoopid"; and the signing of the "Dummy Boy" album in which "Stoopid" appears. *See* Dkt. No. 10 ¶¶ 3, 17-20. Accordingly, this Court finds that venue is proper in this District under 28 U.S.C. § 1391(b)(2).

**IV.**    <u>**Procedural Compliance with Local Civil Rules 7.1 and 55.2**</u>

"A motion for default judgment will not be granted unless the party making the motion adheres to all of the applicable procedural rules." *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Engineers, Loc. 15, 15A, 15C & 15D, AFL-CIO v. Allstate Mapping & Layout, LLC*, No. 22-CV-1831 (PKC)(TAM), 2023 WL 1475389, at *1 (E.D.N.Y. Feb. 2, 2023) (quoting *Century Surety Company v. Adweek*, No. 16-CV-335 (ENV)(PK), 2018 WL 10466835, at *1 (E.D.N.Y. Jan. 9, 2018)). "[L]ocal rules have the force of law, as long as they do not conflict with a rule prescribed by the Supreme Court, Congress, or the Constitution." *See Fin. Servs. Vehicle Tr. v. Osmeña*, No. 22-CV-7491 (RPK)(CLP), 2023 WL 7000935, at *2 (E.D.N.Y. Aug. 15, 2023) (internal quotation marks and citation omitted).

Under Local Civil Rule 7.1, a motion for default judgment must consist of a notice of motion, a memorandum of law, and supporting affidavits and exhibits.  Loc. Civ. R. 7.1(a).  Under Local Civil Rule 55.2, a "party seeking a judgment by default . . . shall append to the application (1) the Clerk's certificate of default, (2) a copy of the claim to which no response has been made, and (3) a proposed form of default judgment," and must mail these three items to the last known residence of the defaulting party (if an individual).  Loc. Civ. R. 55.2(b)-(c).

Here, Plaintiff has complied with Local Civil Rules 7.1 and 55.2.  Plaintiff's motion incudes a proper notice of motion and supporting affidavits with exhibits.  *See* Dkt. No. 52.  These exhibits include the amended complaint (Dkt. No. 52-5) and certificate of default (Dkt. No. 52-6).  Plaintiff also attaches a proposed form of default judgment.  Dkt. No. 52-10.  Lastly, Plaintiff filed an affidavit of service showing that Hernandez was served with a copy of Plaintiff's motion at his last known residence.  Dkt No. 52-2.  Plaintiff has therefore established compliance with Local Civil Rules 7.1 and 55.2.

## V.   <u>Non-Compliance with the Servicemembers Civil Relief Act</u>

The SCRA requires a plaintiff seeking default judgment to "file with the court an affidavit stating whether or not the defendant is in military service and showing necessary facts to support the affidavit."  50 U.S.C. § 3931; *see also Windward Bora, LLC v. Ortiz*, No. 21-CV-04154 (MKB) (JMW), 2022 WL 3648622, at *5 (E.D.N.Y. July 5, 2022), *report and recommendation adopted*, 2022 WL 3647586 (E.D.N.Y. Aug. 24, 2022); *Dominguez v. Hernandez*, No. 21-CV-7051 (MKB) (VMS), 2023 WL 2575224, at *20 (E.D.N.Y. Feb. 22, 2023), *report and recommendation adopted*, 2023 WL 2574876 (E.D.N.Y. Mar. 20, 2023) (denying motion for default judgment in a case involving Defendant Hernandez because "[t]he motion for default judgment did not contain an affidavit or similar document confirming a reasonable investigation into the question of whether

the individual Defendants Hernandez and Cornish are on active military service" and explaining that "[t]he references to an inquiry as to Mr. Cornish's military status included in the affidavit for service of the summons and complaint did not satisfy the statutory requirements.").

"The non-military affidavit must be based not only on an investigation conducted after the commencement of an action or proceeding but also after a default in appearance by the party against whom the default judgment is to be entered." *Apex Mar. Co. v. Furniture, Inc.*, No. 11-CV-5365 (ENV) (RER), 2012 WL 1901266, at *1 (E.D.N.Y. May 18, 2012). "The court lacks the power to excuse compliance with th[is] statute." *Uribe v. Nieves*, No. 17-CV-5155 (RRM) (RER), 2018 WL 4861377, at *1 (E.D.N.Y. Sept. 26, 2018).

Here, Plaintiff submits a declaration from his counsel stating that Hernandez is not in the military. *See* Dkt. No. 52-4. The declaration notes that Hernandez formerly appeared in this action through counsel who "did not indicate that [Hernandez] was or ever had been in the military." *Id.* ¶ 3. The declaration also points to Hernandez's status as a "well-known public figure" and his recent arrest in the Dominican Republic. *Id.* ¶¶ 4, 7. Finally, counsel argues that Hernandez *could not* be in the military because "upon information and belief," he is currently serving a five-year term of supervised release for federal racketeering charges, "which would prohibit him from serving in the military." *Id.* ¶ 6; *see also* Dkt. No. 52-2 ¶ 5 ("Defendant Hernandez is not presently in the military of the United States as it appears from facts in this litigation.").

Plaintiff's declaration is insufficient to meet the SCRA's requirements. First, the declaration does not provide sufficient facts for this Court to conclude that Plaintiff investigated Hernandez's military service at the time of default. *See Guanglei Jiao v. Shang Shang Qian Inc.*, No. 18-CV-5624 (ARR) (VMS), 2020 WL 5105063, at *2 (E.D.N.Y. Aug. 31, 2020) ("[U]nder the SCRA, [the declaration] must attest to military service *at the time of default*." (emphasis in

11

original)); *see Apex Mar. Co.*, 2012 WL 1901266, at *1 (explaining that the plaintiff must investigate the defendant's military status when commencing the action and after the defendant defaults).  Statements previously made, or not made, by Hernandez's former counsel do not shed light on whether Hernandez was in the military at the time of default.  *See Pinela Jurado v. Sabor Hispano, Inc.*, No. 20-CIV-1104 (RPK)(VMS), 2021 WL 11690645, at *7 (E.D.N.Y. Aug. 5, 2021) (denying motion for default judgment on SCRA grounds because plaintiff "failed to offer facts to support this latter conclusory statement or show that any investigation into the individual Defendant's military status had been conducted since attempting to serve process on March 4, 2020"); *Guanglei Jiao*, 2020 WL 5105063, at *2 (holding that plaintiff could not rely solely on statements made when the summons and complaint was served to support conclusion that defendant was not in the military at the time of default); *Apex Mar. Co.*, 2012 WL 1901266, at *1 (denying motion for default judgment because "Plaintiffs' papers indicate that an investigation was conducted at the time of service of the complaint. But[] the papers do not indicate that a post-default investigation was conducted.").

Indeed, while Plaintiff argues that Defendant's counsel "did not indicate that [Defendant Hernandez] was or ever had been in the military" (Dkt. No. 52-4 ¶ 3), "[t]he non-military affidavit must be based not only on an investigation conducted after the commencement of an action or proceeding *but also after a default in appearance by the party against whom the default judgement is to be entered.*"  *Pruco Life Ins. Co. of N.J. v. Estate of Locker*, No. 12-CV-882 (ENV) (RML), 2012 WL 3062754, at *1 (E.D.N.Y. July 23, 2012) (emphasis added).  Here, there is no indication that any investigation, or concession by Defendant Hernandez's former attorney, occurred after the default judgment was entered on December 18, 2023.  *See J & J Sports Prods., Inc. v. Vergara*, No. 19-CV-2382 (FB) (VMS), 2020 WL 1034393, at *6 (E.D.N.Y. Feb. 6, 2020), *report and*

*recommendation adopted*. *J & J Sports Prods. Inc. v. Vergara*, 2020 WL 1031756 (E.D.N.Y. Mar. 3, 2020) ("Because the non-military affidavit must be based on an investigation conducted after a defendant's default, this Court cannot credit Mr. Rodriguez's statement that Mr. Vergara was not a servicemember at the time of service of process.").

Moreover, statements made "upon information and belief" cannot be used to satisfy the SCRA's requirements.  *See Uribe*, 2018 WL 4861377, at *1 (collecting cases).  Thus, even if this Court could properly consider Plaintiff's argument about Hernandez being precluded from military service, the declaration would still be insufficient because counsel's statements about Hernandez serving a term of supervised release are made upon information and belief.  *See* Dkt. No. 52-4 ¶ 6; *see also Uribe*, 2018 WL 4861377, at *1 ("The Court lacks the power to excuse compliance with the statute.") (citation omitted).

To ensure compliance with the SCRA, Plaintiff can, for instance, "obtain a report certifying active-duty military status through the Servicemembers Civil Relief Act website."  *Morales v. Los Cafetales Rest. Corp.*, No. 21-CV-1868 (AMD) (RER), 2023 WL 375647, at *5 (E.D.N.Y. Jan. 3, 2023), *report and recommendation adopted*, 2023 WL 375642 (E.D.N.Y. Jan. 24, 2023) (citing https://scra.dmdc.osd.mil/scra).  The Court notes that "Plaintiff's burden in this regard is not a heavy one," especially since "the Department of Defense maintains a Servicemembers Civil Relief Act website for the purposes of, among other things, determining whether an individual is on active duty."  *Alzal Corp. v. Killer Carz LLC*, No. 15-CV-4968 (RPK) (MMH), 2024 U.S. Dist. LEXIS 59929, at *9 n.4 (E.D.N.Y. Mar. 29, 2024) (quoting *Pinela Jurado*, 2021 WL 11690645, at *7); *Morales v. Los Cafetales Rest. Corp.*, No. 21-CV-1868 (AMD) (RER), 2023 WL 375647, at *13 n.3 (E.D.N.Y. Jan. 3, 2023) ("It is possible to obtain a report certifying active-duty military status

through the Servicemembers Civil Relief Act website."), *report and recommendation adopted*, 2023 WL 375642 (E.D.N.Y. Jan. 24, 2023).

At bottom, "[w]hile in substance it may seem unlikely that [Hernandez was] actively serving in the military at the time of default, that does not absolve plaintiff[] from complying with the procedural requirements of the SCRA." *Guanglei Jiao*, 2020 WL 5105063, at *2. Accordingly, this Court respectfully recommends that Plaintiff's motion for default judgment be denied without prejudice to renew for failure to comply with the SCRA.

## VI.   **Conclusion**

Accordingly, this Court respectfully recommends that Plaintiff's motion for default judgment be denied without prejudice to renew.

A copy of this Report and Recommendation is being electronically served on counsel.  This Court directs Plaintiff's counsel to serve a copy of this Report and Recommendation by overnight mail and first-class mail to Defendant Hernandez at the below address:

> Daniel Hernandez
> 80 Halley Drive
> Pomona, New York 10970

A copy shall also be emailed to Oscar.hernandez1994@gmail.com.  Proof of service shall be filed  on ECF by April 25, 2024.

Any objections to this Report and Recommendation must be filed within 14 days after service of this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). *See also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days).  Any requests for an extension of time for filing objections must be directed to Judge Gonzalez.  Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v.*

14

*Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010);

*Kotlyarsky v. United States Dep't of Just.*, No. 22-2750, 2023 WL 7648618 (2d Cir. Nov. 15,

2023); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:      Brooklyn, New York
            April 22, 2024

                              SO ORDERED:


                               /s/ Joseph A. Marutollo
                              JOSEPH A. MARUTOLLO
                              United States Magistrate Judge

15