UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SETH GORDON,

                          Plaintiff,

          v.

BRYTAVIOUS CHAMBERS; DANIEL
HERNANDEZ; CREATE MUSIC GROUP, INC.;
TENTHOUSAND PROJECTS, LLC; S.C.U.M GANG
INC.; and REITLER KAILAS ROSENBLATT LLC,

                          Defendants.
------------------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**

20-CV-696
(Gonzalez, J.)
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

      Plaintiff Seth Gordon brought this action against Defendants Brytavious Chambers; Daniel

Hernandez; Create Music Group, Inc.; TenThousand Projects, LLC; and S.C.U.M. Gang Inc.,

seeking damages and injunctive relief under the Copyright Act, 17 U.S.C. § 101 *et. seq.*, for the

alleged unauthorized use of Plaintiff's musical composition "Yung Gordon Intro."  *See generally*

Dkt. No. 1.  Daniel Hernandez, also known as the rap artist "Takashi 6ix9ine," is currently the

only remaining defendant in this case.[1]

      Presently before this Court, on a referral from the Honorable Hector Gonzalez, United

States District Judge, is Plaintiff's motion for default judgment against Hernandez.  *See* Dkt. Nos.

56, 58; *see also* June 11, 2024 Dkt. Order.  For the reasons set forth below, this Court respectfully

---

[1] The other named Defendants have been dismissed.  *See* Dkt. No. 20 (granting TenThousand Projects, LLC's motion to dismiss for lack of personal jurisdiction); Dkt. No. 29 (stipulating dismissal of claims against Create Music Group, Inc.); Dkt. No. 48 (dismissing claims against Brytavious Chambers); Nov. 16, 2023 Dkt. Order (dismissing claims against S.C.U.M. Gang Inc.).  The Court respectfully recommends that the Clerk of Court amend the case caption to reflect the dismissal of Defendant Mohamed.  *See United States v. Edwards*, 241 F.R.D. 146, 148 (E.D.N.Y. 2007) (collecting cases for the premise that amendments to a case caption to make technical changes are generally permissible).

recommends that Plaintiff's motion for default judgment be granted, except as to the amount of attorneys' fees requested.

I.   <u>**Background**</u>

A.   **Factual Allegations**

The following facts are taken from the complaint, Plaintiff's motion, and the attachments filed in support of Plaintiff's motion; the facts are assumed to be true for the purposes of this motion. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (in light of defendant's default, a court is required to accept all of plaintiff's factual allegations as true and draw all reasonable inferences in plaintiff's favor); *see also BASF Corp. v. Original Fender Mender, Inc.*, No. 23-CV-2796 (HG) (JAM), 2023 WL 8853704, at *1 (E.D.N.Y. Dec. 22, 2023), *report and recommendation adopted*, Text Order (E.D.N.Y. Jan. 9, 2024); *Doe v. Hyassat*, No. 18-CV-6110 (PGG) (OTW), 2024 WL 1955354, at *1 (S.D.N.Y. May 3, 2024) (same).

According to Plaintiff, a "radio drop" is a short music clip that is played on the radio, often to promote the musician's affiliation with a radio station or promoter.  Dkt. No. 10 ¶¶ 10-11.  On or about November 15, 2016, Plaintiff alleges that he wrote and performed a nine-second radio drop, with the following lyrics: "Y'all already know, it be the boy Yung Gordon / You rockin' with Take Money Promotions / Ay Take Money Promotions / Give 'em that new sh-t, no fool sh-t/ Oh Yeah, let's go" (referred herein as the "Drop").  *Id.* ¶ 13.  Plaintiff claims that he wrote the Drop in response to a solicitation from non-party Take Money Promotions ("Take Money") for use in their programming.  *Id*. ¶ 10.  The Drop is characterized by an original use of language, voice, and intonation, particularly Plaintiff's characteristic "let's go" signoff.  *Id*. ¶ 14.

On November 16, 2016, Plaintiff emailed the Drop to Take Money with the subject line "yung gordon drop." *Id.* ¶ 15. Plaintiff claims that Take Money then shared the Drop with Hernandez. *Id*. ¶ 16.

Almost two years later, on October 5, 2018, Hernandez released a song called "Stoopid" as a single on all major streaming platforms and as part of Hernandez's album "Dummy Boy." *Id.* ¶ 17. "Stoopid" purportedly opens with the Drop written and performed by Plaintiff. *Id.* Plaintiff confirmed this by looking at the song lyrics posted on Hernandez's official YouTube page—the first five lines of which match the lyrics of the Drop. *Id.* ¶ 23.

"Stoopid" was an immediate success: it went certified platinum, indicating the equivalent of one million certified sales, and the song peaked at number 25 on the U.S. Billboard Hot 100. *Id.* ¶ 26. It also made several international top 100 lists. *Id.* ¶¶ 26-29. Hernandez released a music video for "Stoopid," which features him lip-synching the lyrics of the Drop in a Dubai amusement park. *Id.* ¶ 22. In 2021, Hernandez performed "Stoopid" live at the music festival "Thrillerfest." Dkt. No. 52-8 at 33:16-24.

Plaintiff contends that he did not authorize Hernandez to use the Drop in "Stoopid" or at any other point. Dkt. No. 10 ¶ 24. In fact, Hernandez never sought Plaintiff's permission to use it. *Id.* Plaintiff argues that Hernandez has collected, and continues to collect, substantial profits from the success of "Stoopid," including fees and royalties—none of which have been shared with Plaintiff. *Id.* ¶ 30.

On January 1, 2019, Plaintiff registered the Drop with the United States Copyright Office under Registration Number SR0000838014. *See* Dkt. No. 52–7, at 1. The copyright is titled "Yung Gordon Intro." *See id.*

### B.      Procedural History

On February 7, 2020, Plaintiff filed a complaint against Defendants Brytavious Chambers; Daniel Hernandez; Create Music Group, Inc.; Tenthousand Projects, LLC; and S.C.U.M. Gang, Inc.  Dkt. No. 1.  On May 5, 2020, Plaintiff filed an amended complaint.  Dkt. No. 10.

On July 31, 2020, Hernandez, appearing through counsel, filed an answer to the amended complaint.  *See* Dkt. No. 16.  Hernandez asserts affirmative defenses for failure to state a claim, fair use, independent creation, *de minimis* taking, lack of substantial similarity, lack of originality, laches, estoppel, lack of prior registration, copyright formalities, speculative and conjectural harm, and innocent infringement.  *Id.*

On February 16, 2021, Hernandez's attorney, Brian D. Caplan of the firm Reitler Kailas & Rosenblatt LCC, requested a pre-motion conference to withdraw as counsel, claiming that there was a breakdown in the attorney-client relationship.  Dkt. No. 22.  The Court granted the motion and held a pre-motion conference on February 23, 2021.  Feb. 22, 2021 Dkt. Order; *see also* Feb. 23, 2021 Minute Entry.  At the pre-motion conference, the Court set a briefing schedule for Mr. Caplan's motion to withdraw as counsel.  *Id.*  The Court ordered Mr. Caplan "to file his motion to withdraw as counsel for Defendant Daniel Hernandez on ECF by 3/12/2021 and serve[] it on the defendants and transactional counsel."  *Id.*

On March 8, 2021, Mr. Caplan filed his motion to withdraw.  Dkt. Nos. 23-25.  On March 31, 2021, the Court held a teleconference on the motion to withdraw.  Mar. 31, 2021 Minute Entry.  Hernandez did not appear at the conference.  *Id.*  The Court granted Mr. Caplan's motion to withdraw and permitted Hernandez to appear *pro se*.  *Id.*  The Court also directed Mr. Caplan "to serve a copy of this minute entry by mail to Mr. Hernandez then file the last known address and phone number for the defendant under seal no later than 4/9/21."  *Id.*

4

On June 29, 2021, another attorney, Robert S. Meloni, Esq., appeared in this case on behalf of Hernandez.  Dkt. No. 31.  The parties proceeded with discovery until October 11, 2022, when Mr. Meloni filed a motion to withdraw as counsel.  *See* Dkt. No. 43.  Mr. Meloni represented that there had been a "total breakdown in communication between Mr. Hernandez" and his firm, which made "it impossible for the [f]irm to continue its representation because, among other things, we are unable to get Mr. Hernandez's input on discovery decisions or strategic decisions required during the course of the litigation."  *Id.* at 2.

On October 19, 2022, the Court ordered Hernandez to respond to Mr. Meloni's motion by October 28, 2022.  Oct. 19, 2022 Dkt. Order.  The Court ordered Mr. Meloni to "serve a copy of this order on Daniel Hernandez by mail, email and text, including his business manager by all such methods no later than 10/20/2022."  *Id.*

Hernandez did not respond to the Court's order.  The Court scheduled a motion hearing for November 15, 2022.  *See* Nov. 2, 2022 Dkt. Order.

Hernandez did not appear at the November 15, 2022 motion hearing.  *See* Nov. 15, 2022 Minute Entry.  The Court granted Mr. Meloni's motion and ordered him to provide the Court with contact information for Hernandez, his brother, and his former business manager by November 18, 2024.  *Id.*  The Court also certified discovery complete.  *Id.*

On November 29, 2022, Plaintiff filed a letter requesting a pre-motion conference in advance of filing a motion for summary judgment pursuant to Fed. R. Civ. P. 56.  Dkt. No. 45.  The Court subsequently set a briefing schedule, and on March 29, 2023, Plaintiff filed his motion for summary judgment, which Hernandez did not oppose.  Dkt. Nos. 47, 48.

On November 7, 2023, the Court ordered Hernandez to advise the Court, by December 7, 2023, whether he intended to proceed *pro se* or to have his new counsel file a notice of appearance

on the docket. Nov. 7, 2023 Dkt. Order.  The Court warned Hernandez that if he failed to comply, the Court would consider imposing sanctions, including entering a default judgment against him. *Id.*

Hernandez did not comply with the Court's order.  As a result, on December 12, 2023, Plaintiff requested a certificate of default against Hernandez.  Dkt. No. 49.  On December 18, 2023, the Clerk of Court granted the certificate of default, and the Court entered an order terminating Plaintiff's motion for summary judgment as moot and ordering Plaintiff to file a motion for default judgment.  Dkt. No. 50; *see also* Dec. 18, 2023 Dkt. Order.

On January 17, 2024, Plaintiff filed a motion for default judgment against Hernandez.  Dkt. No. 51.  On January 18, 2024, the Court ordered Plaintiff to file an amended motion that complies with Local Rules 7.1 and 55.2(b) and the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. § 3931.  Jan. 18, 2024 Dkt. Order.

On January 22, 2024, Plaintiff filed an amended motion for default judgment, which consists of: (1) a memorandum of law; (2) a declaration from Plaintiff's counsel with exhibits, which include a copy of the amended complaint and certificate of default; (3) a declaration purporting to establish compliance with the SCRA; (4) an affidavit of service showing that Plaintiff served Hernandez with the motion by mailing a copy to Hernandez's last known address and emailing a copy to Hernandez's brother; and (4) a proposed order for default judgment.  *See* Dkt. No. 52.

On April 22, 2024, the undersigned issued a Report and Recommendation that Plaintiff's motion be denied because Plaintiff had not established compliance with the SCRA, 50 U.S.C. § 3931.  Dkt. No. 53; *see also Gordon v. Chambers*, No. 20-CV-696 (HG) (JAM), 2024 WL 1710901 (E.D.N.Y. Apr. 22, 2024).  On May 28, 2024, the Court adopted the Report and Recommendation

and ordered Plaintiff to "file a new motion for a default judgment that addresses **all** deficiencies noted in Judge Marutollo's Report & Recommendation" by June 11, 2024. *See* May 28, 2024 Dkt. Order (emphasis in original).

On June 11, 2024, Plaintiff filed its third motion for default judgment, which consists of: (1) a memorandum of law; (2) a declaration from Plaintiff's counsel with exhibits, which include a copy of the amended complaint and certificate of default; (3) an affidavit of service showing that Plaintiff served Hernandez with the motion by mailing a copy to Hernandez's last known address and emailing a copy to Hernandez's brother; (4) a declaration establishing compliance with 50 U.S.C. § 3931; and (4) a proposed order for default judgment. *See* Dkt. No. 56.

On July 1, 2024, this Court issued the following order:

In Plaintiff's motion for default judgment, the Court requires additional information to fully assess the reasonableness of the damages and attorneys' fees requested.

Plaintiff fails to specify if he is seeking attorneys' fees in this action. The Copyright Act provides that a prevailing party may recover attorneys' fees. 17 U.S.C. § 505 ([T]he court may . . . award a reasonable attorney's fee to the prevailing party[.]). Plaintiff shall file a letter [] indicating whether he is seeking attorneys' fees here. If so, Plaintiff shall append to that letter the following:

(1) An affidavit listing (i) the names of each attorney and staff member who worked on the action; (ii) the number of hours billed per attorney and staff member; (iii) the rate at which each attorney and staff member billed; and (iv) the total monetary amount requested per attorney and staff member for work performed. Given the length of this action, Plaintiff should also specify any changes to individual billing rates over time including effective date(s).

(2) Contemporaneous time records that specify "the date, the hours expended, and the nature of the work done" in this action. *N.Y. State Ass'n for Ret. Children v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

(3) Biographical information for each attorney and staff member for whom fees are sought, consistent with the Local Civil Rules.

Additionally, in the letter to be filed [], Plaintiff shall provide case law support as to why Plaintiff is entitled to "1/13th of the overall profits" sought in this action.

*See* Dkt. No. 56-1, at 7. Plaintiff shall explain the basis for that precise mathematical calculation, if any.

July 1, 2024 Dkt. Order.

On July 16, 2024, Plaintiff filed a letter-motion in response to the Court's July 1, 2024 order. Dkt. No. 58.

## II.    <u>Standard for Default Judgment</u>

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). At the first step, the Clerk of Court enters a party's default after an affidavit or other evidence shows that the "party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a); *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV) (MMH), 2023 WL 6338666, at *3 (E.D.N.Y. Sept. 29, 2023) ("when a party uses an affidavit or other proof to show that a party has 'failed to plead or otherwise defend' against an action, the clerk shall enter a default." (citing Fed. R. Civ. P. 55(a)). "If a claim is for 'a sum certain or a sum that can be made certain by computation,' the clerk can enter judgment." *Id.* (citing Fed. R. Civ. P. 55(b)(1)).

At the second step, and "[i]n all other cases, the party must apply to the court for a default judgment." *Id.* (citing Fed. R. Civ. P. 55(b)(2)). To "enter or effectuate judgment" the Court is empowered to: "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2).

The Second Circuit "generally disfavor[s]" default judgment and has repeatedly expressed a "preference for resolving disputes on the merits." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95-96 (2d Cir. 1993). Nevertheless, in evaluating a motion for default judgment, a court accepts as true the plaintiff's well-pleaded factual allegations, except those relating to damages.

*Greyhound Exhibitgroup*, *Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974).   A plaintiff bears the burden of alleging "specific facts," rather than "mere labels and conclusions" or a "formulaic recitation of the elements," so that a court may infer a defendant's liability.  *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314 (SJ) (RER), 2015 WL 5561033, at *3 (E.D.N.Y. Sept. 1, 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), *report and recommendation adopted*, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015)).

The decision to grant or deny a default motion is "left to the sound discretion of a district court."  *Esquivel*, 2023 WL 6338666, at *3 (quoting *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999)).  A court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established."  *Chen v. Oceanica Chinese Rest., Inc.*, No. 13-CV-4623 (NGG) (PK), 2023 WL 2583856, at *7 (E.D.N.Y. Mar. 21, 2023) (quotations and citation omitted).  The Court may also "consider numerous factors, including whether plaintiff has been substantially prejudiced by the delay involved and whether the grounds for default are clearly established or in doubt."  *Franco v. Ideal Mortg. Bankers, Ltd.*, No. 07-CV-3956 (JS) (AKT), 2010 WL 3780972, at *2 (E.D.N.Y. Aug. 23, 2010) (cleaned up), *report and recommendation adopted*, 2010 WL 3780984 (E.D.N.Y. Sept. 17, 2010).  "As the Second Circuit has observed, the Court is guided by the same factors which apply to a motion to set aside entry of a default," which include "whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment."  *Id.* (citation omitted); *see also Enron Oil Corp.*, 10 F.3d at 96.

### III.   Jurisdiction and Venue

The Court "must [] satisfy itself that it has subject matter and personal jurisdiction before rendering judgment against defendants." *Dumolo v. Dumolo*, No. 17-CV-7294 (KAM) (CLP), 2019 WL 1367751, at *4 (E.D.N.Y. Mar. 26, 2019); *see Covington Indus., Inc. v. Resintex A.G.*, 629 F.2d 730, 732 (2d Cir. 1980) ("A judgment entered against parties not subject to the personal jurisdiction of the rendering court is a nullity.").

### A.   Subject Matter Jurisdiction

The Court has original jurisdiction over Plaintiff's copyright claims pursuant to 28 U.S.C. § 1338(a), which states, "[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to . . . copyrights." *See DISH Network L.L.C. v. 786 Wireless World, Inc.*, No. 21-CV-5730 (AMD) (RML), 2024 WL 708229, at *2 (E.D.N.Y. Jan. 3, 2024), *report and recommendation adopted*, 2024 WL 1092498 (E.D.N.Y. Mar. 13, 2024) ("In this case, the court has subject matter jurisdiction over DISH's claims pursuant to 28 U.S.C. §§ 1331 and 1338 because they arise under the Copyright Act, 17 U.S.C. §§ 101, et seq.").

### B.   Personal Jurisdiction

"A court may not enter default judgment unless it has jurisdiction over the person of the party against whom the judgment is sought, which also means that he must have been effectively served with process." *BASF Corp.*, 2023 WL 8853704, at *5 (internal quotation marks and citation omitted); *see also Frost & Miller, LLP v. Heaven's Way Inv. Tr.*, No. 21-CV-6648 (AT) (BCM), 2022 WL 540070, at *2 (S.D.N.Y. Feb. 22, 2022) ("Before a judgment can be entered and damages or other relief can be awarded, even after default, the Court must be satisfied that it has personal jurisdiction over each Defaulting Defendant").  But because personal jurisdiction is a waivable defense, "a district court should not raise personal jurisdiction *sua sponte* when a defendant has

appeared and consented, voluntarily or not, to the jurisdiction of the court." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011) (quoting *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010)); *see also* Fed. R. Civ. P. 12(h).

Hernandez appeared in this action through counsel and filed an answer to the amended complaint. *See* Dkt. No. 16. Hernandez's answer raises several affirmative defenses, none of which are for lack of personal jurisdiction. *See id.* He has therefore waived this defense and cannot later challenge a judgment entered by this Court on personal jurisdiction grounds. *See Mickalis Pawn Shop, LLC*, 645 F.3d at 119 (holding that "defendants forfeited the defense of lack of personal jurisdiction and any other defenses they may have had by willfully abandoning their defense of the litigation."); *see also Copulsky v. Boruchow*, 545 F. Supp. 126, 128 (E.D.N.Y. 1982) (holding that defendant waived personal jurisdiction defense by failing to raise it in his answer).

### C.    Venue

"A civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Here, Plaintiff contends that a substantial number of events giving rise to his copyright claim occurred in the Eastern District of New York – namely, the distributing, streaming, selling, downloading, performing, and otherwise exploiting of Stoopid; the mixing and recording of Stoopid; and the signing of the Dummy Boy album in which Stoopid appears. *See* Dkt. No. 10 ¶¶ 3, 17-20. Accordingly, this Court finds that venue is proper in this District under 28 U.S.C. § 1391(b)(2).

## IV.     Procedural Compliance with Local Civil Rules 7.1 and 55.2[2]

"A motion for default judgment will not be granted unless the party making the motion adheres to all of the applicable procedural rules."  *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Engineers, Loc. 15, 15A, 15C & 15D, AFL-CIO v. Allstate Mapping & Layout, LLC*, No. 22-CV-1831 (PKC) (TAM), 2023 WL 1475389, at *1 (E.D.N.Y. Feb. 2, 2023) (quoting *Century Surety Company v. Adweek*, No. 16-CV-335 (ENV)(PK), 2018 WL 10466835, at *1 (E.D.N.Y. Jan. 9, 2018)).  "[L]ocal rules have the force of law, as long as they do not conflict with a rule prescribed by the Supreme Court, Congress, or the Constitution."  *See Fin. Servs. Vehicle Tr. v. Osmeña*, No. 22-CV-7491 (RPK)(CLP), 2023 WL 7000935, at *2 (E.D.N.Y. Aug. 15, 2023) (internal quotation marks and citation omitted).

Under Local Civil Rule 7.1, a motion for default judgment must consist of a notice of motion, a memorandum of law, and supporting affidavits and exhibits.  *See* Loc. Civ. R. 7.1(a).  Under Local Civil Rule 55.2, a "party seeking a judgment by default . . . shall append to the application (1) the Clerk's certificate of default, (2) a copy of the claim to which no response has been made, and (3) a proposed form of default judgment," and must mail these three items to the last known residence of the defaulting party (if an individual).  Loc. Civ. R. 55.2(b)-(c).

Here, Plaintiff has complied with Local Civil Rules 7.1 and 55.2.  Plaintiff's motion incudes a proper notice of motion and supporting affidavits with exhibits.  *See* Dkt. No. 56.  These exhibits include the amended complaint (Dkt. No. 56-5) and certificate of default (Dkt. No. 56-6).  Plaintiff also attaches a proposed form of default judgment (Dkt. No. 56-11).  Lastly, Plaintiff filed

---

[2] The Local Rules of the United States District Court for the Southern and Eastern Districts of New York were updated on July 1, 2024.  As set forth in Local Rule 1.1., "[t]hese Local Civil Rules take effect on July 1, 2024 [] and govern actions pending or filed on or after that date.  For actions pending on the Effective Date, if fewer than 14 days remain to perform an action governed by these Rules, the provisions of the previous Local Rules effective on June 30, 2024 will govern."  Thus, the previous Local Rules are applicable here.

an affidavit of service showing that Hernandez was served with a copy of Plaintiff's motion at his last known residence.  Dkt No. 56-3.  Plaintiff has therefore established compliance with Local Civil Rules 7.1 and 55.2.

## V.   Compliance with the Servicemembers Civil Relief Act

The SCRA requires a plaintiff seeking default judgment to "file with the court an affidavit stating whether or not the defendant is in military service and showing necessary facts to support the affidavit."  50 U.S.C. § 3931; *see also Windward Bora, LLC v. Ortiz*, No. 21-CV-4154 (MKB) (JMW), 2022 WL 3648622, at *5 (E.D.N.Y. July 5, 2022), *report and recommendation adopted*, 2022 WL 3647586 (E.D.N.Y. Aug. 24, 2022).  "The non-military affidavit must be based not only on an investigation conducted after the commencement of an action or proceeding but also after a default in appearance by the party against whom the default judgment is to be entered."  *Apex Mar. Co. v. Furniture, Inc.*, No. 11-CV-5365 (ENV) (RER), 2012 WL 1901266, at *1 (E.D.N.Y. May 18, 2012).  "The court lacks the power to excuse compliance with th[is] statute."  *Uribe v. Nieves*, No. 17-CV-5155 (RRM) (RER), 2018 WL 4861377, at *1 (E.D.N.Y. Sept. 26, 2018).

Here, as part of its current motion for default judgment, Plaintiff submits an affidavit, dated June 10, 2024, from Ellen J. Rowe, a legal assistant with the Servicemembers Civil Relief Act Centralized Verification Service.  *See* Dkt. No. 56-10; *see also* Dkt. No. 56-4.  The affidavit certifies that, following an investigation, it was determined that Hernandez was not on active duty at the time of the default on December 18, 2023.  *See id*.  This affidavit is therefore sufficient to establish compliance with 50 U.S.C. § 3931.  *See Morales v. Los Cafetales Rest. Corp.*, No. 21-CV-1868 (AMD) (RER), 2023 WL 375647, at *5 (E.D.N.Y. Jan. 3, 2023), *report and recommendation adopted*, 2023 WL 375642 (E.D.N.Y. Jan. 24, 2023); *see also Apex Mar. Co. v. Furniture, Inc.*, No. 11-CV-5365 (ENV) (RER), 2012 WL 1901266, at *1 (E.D.N.Y. May 18,

2012) ("The non-military affidavit must be based not only on an investigation conducted after the commencement of an action or proceeding but also after a default in appearance by the party against whom the default judgment is to be entered.") (internal citations omitted).

## VI.   Default Judgment Factors

"A threshold question before reaching liability or damages is whether [the defaulting defendant's] conduct is sufficient to warrant default judgment being entered." *Annuity, Pension, Welfare & Training Funds of the Int'l Union of Operating Engineers Loc. 14-14B, AFL-CIO v. NAMOW*, Inc., No. 17-CV-1469 (ARR) (SJB), 2018 WL 1440545, at *2 (E.D.N.Y. Feb. 28, 2018), *report and recommendation adopted*, 2018 WL 1440542 (E.D.N.Y. Mar. 22, 2018).   In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default.  *See Enron Oil Corp.*, 10 F.3d at 96.  "When deciding whether to relieve a party from default or default judgment, we consider the willfulness of the default, the existence of a meritorious defense, and the level of prejudice that the non-defaulting party may suffer should relief be granted." *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 171 (2d Cir. 2001); *see also Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044 (LTS) (GWG), 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003) (explaining that courts evaluate "1) whether the defendant's default was willful; 2) whether the defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment.").

First, to demonstrate willful infringement under the Copyright Act, a plaintiff must show "(1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard . . . or willful blindness." *Prepared Food Photos, Inc. v. Chicken Joes, LLC*, No. 23-CV-3895 (JGLC) (JW), 2024 WL 384997, at *5 (S.D.N.Y. Jan. 12,

2024), *report and recommendation adopted*, 2024 WL 382529 (S.D.N.Y. Feb. 1, 2024) (citations omitted). Courts in this Circuit have inferred willful conduct where the Defendant failed to appear and defend in an action. *See, e.g.*, *Prepared Food Photos, Inc.*, 2024 WL 384997, at \*5; *Fallaci v. New Gaz. Literary Corp.*, 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983).

Hernandez's complete failure to litigate this action after both of his attorneys withdrew from this case demonstrates that his default was willful. *See Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*, No. 07-CV-6865 (LTS) (GWG), 2007 WL 4468652, at \*1 (S.D.N.Y. Dec. 20, 2007) (holding that defendants' non-appearance and failure to respond "indicate willful conduct" in the context of a default judgment). Hernandez had sufficient notice of this action from his prior attorneys; the Court even ordered that Hernandez's business manager as well as his brother be given notice of the Court's orders, to no avail. *See, e.g.*, Dkt. Orders dated October 19, 2022; November 2, 2022; and November 15, 2022. Hernandez's failure to respond and failure to offer any explanation for his failure to defend (after an explicit warning from this Court that default judgment may be the consequence of doing so, *see* Dkt. No. 48) is sufficient to establish willfulness. *See Chira v. Lockheed Aircraft Corp.*, 535 F.2d 736, 739 (2d Cir. 1976) (holding that the defendant defaulted willfully after failing to respond to plaintiff's motion for summary judgment or provide evidence of their efforts to ensure their counsel was tending to the lawsuit); *Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-CV-946 (JS) (AKT), 2015 WL 1299259, at \*6 (E.D.N.Y. Mar. 23, 2015) (holding that the failure to respond to multiple motions after appropriate service constituted willful default); *Microsoft Corp. v. Computer Care Ctr., Inc.*, No. 06-CV-1429 (SLT) (RLM), 2008 WL 9359718, at \*5 (E.D.N.Y. Apr. 8, 2008) ("Here, the only reasonable inference is that in ignoring the Court's orders, defendants willfully abandoned their defense of this case.").

As to the second factor, "[a] defense is meritorious if it is good at law so as to give the factfinder some determination to make." *Am. Alliance Ins. Co. v. Eagle Ins. Co., Ltd.*, 92 F.3d 57, 61 (2d Cir. 1996) (citation omitted). "However, a defendant must present evidence of facts that, if proven at trial, would constitute a complete defense." *S.E.C. v. McNulty*, 137 F.3d 732, 740 (2d Cir. 1998) (cleaned up). "Evidence beyond mere 'conclusory denials' is required." *Trustees of Bldg. Trades Educ. Benefit Fund v. Romero Elec. LLC*, No. 19-CV-3515 (DRH) (AYS), 2021 WL 3604811, at *4 (E.D.N.Y. July 19, 2021) ("Here, although Defendants filed an answer to the Complaint, the Answer contains only general denials and affirmative defenses, rendering it inadequate under the applicable law" (quoting *Enron Oil Corp.*, 10 F.3d at 98), *report and recommendation adopted*, 2021 WL 3603613 (E.D.N.Y. Aug. 13, 2021); *see also Lazic v. Dorian Owners, Inc.*, No. 10-CV-1824 (BMC), 2011 WL 319879, at *2 (E.D.N.Y. Jan. 29, 2011) (denying defendants' motion to vacate default judgment in part because the answer to the complaint included only general denials and affirmative defenses, which merely contradicted the allegations without providing any facts that would constitute a complete defense).

At bottom, Hernandez has failed to set forth any evidence to support a complete meritorious defense. While Hernandez raises several affirmative defenses in his July 31, 2020 answer (*see* Dkt. No. 16) Hernandez's defenses are perfunctory and "inadequate to establish a meritorious defense for purposes of a default judgment analysis." *Colonial Sur. Co. v. William G. Prophy LLC*, No. 22-CV-1730 (AMD) (AYS), 2023 WL 7338784, at *7 (E.D.N.Y. Nov. 7, 2023) (weighing factor in favor of plaintiff because defendant's answer contained only general denials and affirmative defenses); *Lazic v. Dorian Owners, Inc.*, No. 10-CV-1824, 2011 WL 319879, at *1–2 (E.D.N.Y. Jan. 29, 2011) (same). Significantly, Hernandez has failed to appear in this matter for close to two years, since at least November 2022 (*see* Nov. 15, 2022 Dkt. Order), and has taken

no litigation actions in this case.  Accordingly, the Court cannot conclude that there is any meritorious defense to Hernandez's allegations. *See, e.g., Esquivel*, 2023 WL 633866, at *4 ("Because Defendants abandoned the litigation, the Court cannot determine whether they have meritorious defenses, which warrants default against them."); *see also Annuity*, 2018 WL 1440545, at *2.

As to the third factor, Plaintiff would be prejudiced if the motion for default judgment were denied in this case "as there are no additional steps available to secure relief in this Court." *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226 (RLC) (RLE), 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008), *report and recommendation adopted*, Dkt. No. 18 (S.D.N.Y. Jan. 26, 2009); *see also Korzeniewski v. Sapa Pho Vietnamese Rest. Inc.*, No. 17-CV-5721 (MKB) (SJB), 2019 WL 312149, at *5 (E.D.N.Y. Jan. 3, 2019) (citations omitted), *report and recommendation adopted*, 2019 WL 291145 (E.D.N.Y. Jan. 23, 2019).  Plaintiff has no other means to recover on his claims against Hernandez except for a default judgment.

Thus, the Court now turns to the liability imposed and damages to be awarded in such a judgment.

## VII.   Liability

### A.   Plaintiff's Claim of Copyright Infringement

In the amended complaint, Plaintiff asserts one count of copyright infringement.  *See* Dkt. No. 10 ¶¶ 35-44.  Plaintiff claims that he is the copyright owner of the Drop and that Hernandez, without Plaintiff's permission or consent, has reproduced and distributed the Drop, thereby infringing on Plaintiff's copyrights and exclusive rights under the copyright.  *See id.*  Plaintiff asserts that Hernandez willfully infringed on Plaintiff's rights so that Plaintiff is entitled to recover

his actual damages and profits attributable to the infringement pursuant to 17 U.S.C. § 504(b).  *Id.* at 9.

### 1.   Legal Standard

"Under the Copyright Act of 1976, as amended, copyright protection attaches to 'original works of authorship'—prominent among them, literary, musical, and dramatic works—'fixed in any tangible medium of expression.'"  *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 300 (2019) (quoting 17 U.S.C. § 102(a)).  "An author gains 'exclusive rights' in her work immediately upon the work's creation, including rights of reproduction, distribution, and display."  *Id.* at 300-01.  "Absent exceptions not relevant here, '[b]efore pursuing an infringement claim in court,' a copyright claimant 'must comply with [17 U.S.C.] § 411(a)'s requirement that 'registration of the copyright claim has been made.''"  *McKenzie v. Big Apple Training Inc.*, No. 22-CV-9554 (GHW), 2023 WL 4866041, at *9 (S.D.N.Y. July 31, 2023) (quoting *Fourth Est. Pub. Benefit Corp.*, 586 U.S. at 301).  "In accordance with that requirement, a 'properly plead[ed] copyright infringement claim must allege,' among other things, 'which specific original works are the subject of the copyright claim' and 'that the [purportedly infringed] copyrights have been registered in accordance with the [copyright] statute.'"  *Id.* (quoting *Zuma Press, Inc. v. Getty Images (US), Inc.*, No. 16-CV-6110 (AKH), 2017 WL 2829517, at *2 (S.D.N.Y. June 29, 2017)).

"To establish a claim of copyright infringement, 'two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'"  *Fema Test Answers, LLC v. Forest Smith*,  No. 22-CV-1108 (MKB), 2024 WL 3178705, at *4 (E.D.N.Y. June 26, 2024) (quoting *Abdin v. CBS Broad. Inc.*, 971 F.3d 57, 66 (2d Cir. 2020) and *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)); *see also Kennedy v. Medgen, Inc.*, No. 14-CV-5843 (ADS) (AYS), 2016 WL 6585812, at *3 (E.D.N.Y.

Apr. 19, 2016) ("A *prima facie* case of copyright infringement is established by showing ownership of a valid copyright and a violation of the exclusive right of use."), *report and recommendation adopted*, 2016 WL 6601450 (E.D.N.Y. Nov. 5, 2016).  "The Copyright Act of 1976 defines copyrightable subject matter as 'original works of authorship fixed in any tangible medium of expression.'"  *Fema Test Answers, LLC*, 2024 WL 3178705, at *4 (quoting *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 580 U.S. 405, 411 (2017) and 17 U.S.C. § 102(a)).

"'To satisfy the second element, a plaintiff must demonstrate that: (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's work.'"  *White v. DistoKid*, No. 22-CV-2205 (VEC) (GWG), 2024 WL 3195471, at *3 (S.D.N.Y. June 24, 2024) (quoting *Abdin*, 971 F.3d at 66).  "Copyright infringement is a strict liability offense in the sense that a plaintiff is not required to prove unlawful intent or culpability, [] and a user does not have to share copyrighted works in order to infringe a copyright."  *EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 89 (2d Cir. 2016) (citations omitted).

### 2.    Analysis

Plaintiff has established that he is the owner of a valid copyright and that Hernandez has copied constituent elements of the work that are original.  *See Abdin*, 971 F.3d at 66.

### a.    The Existence of a Valid Copyright

It is well settled that, "[a] United States Register of Copyrights certificate of registration 'constitutes *prima facie* evidence of the valid ownership of a copyright, although that presumption of ownership may be rebutted.'"  *Fallows v. Vos Iz Neias LLC*, No. 22-CV-7964 (ARR) (LB), 2023 WL 7497080, at *3 (E.D.N.Y. Oct. 25, 2023) (quoting *Hamil America Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir. 1999)), *report and recommendation adopted*, 2023 WL 7522732 (E.D.N.Y. Nov.

13, 2023); *see also* 17 U.S.C. § 410(c) (a "certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate."). "Although the presentation of a copyright certificate generally shifts the burden of proof to Defendants to show the invalidity of Plaintiff['']s copyrights, in the context of a default judgment a timely certificate is sufficient to establish validity." *Korzeniewski*, 2019 WL 312149, at *5; *CJ Prods. LLC v. Concord Toys Int'l Inc.*, No. 10-CV-5712 (ENV) (JO), 2011 WL 178610, at *3 (E.D.N.Y. Jan. 19, 2011) ("Since defendants have not submitted . . . a scintilla of evidence to cast doubt on the validity of any of the subject copyrights, . . . the presumption of validity has certainly not been rebutted.").

Here, Plaintiff has established that he is the owner of a valid copyright by producing a copy of the certificate of registration. *See* Dkt. No. 56-7. The certificate shows that Plaintiff is the owner of the Drop, and that the Drop was registered with the United States Copyright Office under patent SR0000838014. *Id.* As reflected on the certificate of registration, and consistent with 17 U.S.C. § 410(c) Plaintiff registered the Drop on January 19, 2019—less than five years after he recorded it in 2016. *Id.*; *see also* Dkt. No. 10 ¶ 21.

Accordingly, Plaintiff has established the presumptive validity of the copyright for the Drop. *See Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003) (holding that Plaintiff established the presumptive validity of the copyright registration for his song "Lover" by attaching the copyright registration); *Korzeniewski*, 2019 WL 312149, at *5 (holding that plaintiff established ownership element on a motion for default judgment by producing the certificate of registration). And, by virtue of Hernandez's default, he has failed to rebut this presumption of validity. *See Sadowski v. Yeshiva World News, LLC*, No. 21-CV-7207 (AMD) (MMH), 2023 WL 2707096, at *4 (E.D.N.Y. Mar. 16, 2023) ("because Defendants have failed to offer evidence

showing that the certificate of registration is invalid, Plaintiff sufficiently established his valid ownership of the copyright" (internal quotation marks and citation omitted)), *report and recommendation adopted*, 2023 WL 2742157 (E.D.N.Y. Mar. 31, 2023); *Joe Hand Promotions, Inc. v. Rosero*, No. 19-CV-792 (KAM), 2020 WL 2572328, at *4 (E.D.N.Y. Feb. 18, 2020) ("In light of their default, defendants have not rebutted the presumption of validity that attaches with plaintiff's filing of a valid Certificate of Registration, nor have they shown that plaintiff's work is not original.").

Accordingly, Plaintiff has established that he is the owner of a valid copyright for the Drop.

### b.  The Infringement of the Original Work

To satisfy the second element of a copyright infringement claim, the plaintiff must demonstrate that the "(1) the defendant has actually copied the plaintiff's work; *and* (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's.'" *Fallows*, 2023 WL 7497080, at *3 (quoting *Hamil Am.*, 193 F.3d at 99 (emphasis in original)).  "[A]n inquiry into the substantial similarity between a copyrighted work and the allegedly infringing work must be made on a case-by-case basis, as there are no bright-line rules for what constitutes substantial similarity." *Sandoval v. New Line Cinema Corp.*, 147 F.3d 215, 217 (2d Cir. 1998) (citations omitted).

In cases where a copyright owner alleges that a defendant incorporated a brief sample of the copyrighted work into another song, courts apply the "fragmented literal similarity test." *See, e.g.*, *May v. Sony Music Ent.*, 399 F. Supp. 3d 169, 185 (S.D.N.Y. 2019) (Kaplan, J.) (applying fragmented literal similarity test where plaintiff accused defendants of appropriating a specific phrase "exactly or nearly exactly" into a Miley Cyrus song); *TufAmerica, Inc. v. Diamond*, 968 F. Supp. 2d 588, 598 (S.D.N.Y. 2013) (applying fragmented similarity test to plaintiff's allegations

that defendants copied several different small samples of plaintiff's songs into various of defendants' songs); *Ringgold v. Black Entertainment Television, Inc.*, 126 F.3d 70, 75 n.3 (2d Cir. 1997) (noting that the Second Circuit has "endorsed th[e] taxonomy" distinguishing between "fragmented literal similarity" and "comprehensive nonliteral similarity").  Under the fragmented literal similarity test, "the question of substantial similarity is determined by an analysis of 'whether the copying goes to trivial or substantial elements' of the original work."  *May*, 399 F. Supp. 3d at 180 (citations omitted).  Fragmented literal similarity exists where parts of the pre-existing work are copied in the new work.  *See Williams v. Broadus*, No. 99-CV-10957 (MBM), 2001 WL 984714, at *3 (S.D.N.Y. Aug. 27, 2001) (citing 4 M. Nimmer & D. Nimmer, Copyright § 13.03[A][2] at 13-45).

Here, Plaintiff has established that Hernandez infringed Plaintiff's rights.  The evidence demonstrates that Hernandez used the Drop when performing his song, Stoopid, without Plaintiff's authorization or consent in 2018.  Plaintiff confirmed that Stoopid includes the Drop by comparing the lyrics of Stoopid to the Drop's lyrics, which were the same.  Dkt. No. 10. ¶¶ 13, 23.  Hernandez also admitted at his deposition that he used the Drop when performing Stoopid at least two to three times, including in a music video and at the Thrillerfest event.  *See* Dkt. No. 56-8, at 30-35, *id.* at 33 ("And when you performed Stoopid those two or three times, were you -- do you recall using Mr. Gordon's drop as part of those performances? [Hernandez:] I believe so.").  Hernandez further admitted that he never paid Plaintiff nor entered in a license agreement to use the Drop.  *Id.* at 8.

Accordingly, Plaintiff has established that Hernandez is liable for copyright infringement.

## VIII.  **Damages**

As Hernandez's liability has been established, the Court turns to evaluate damages.  "While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it

is not considered an admission of damages." *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. "Rather, the Court must be satisfied that Plaintiff has met the burden of proving damages to the Court with reasonable certainty." *Balhetchet v. Su Caso Mktg. Inc.*, No. 19-CV-4475 (PKC) (SJB), 2020 WL 4738242, at *3 (E.D.N.Y. Aug. 14, 2020) (cleaned up).

A plaintiff may submit documentary evidence or detailed affidavits to support their damages claim. *Chen*, 2023 WL 2583856, at *14. "The court must conduct an inquiry to ascertain the amount of damages with reasonable certainty." *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878 (RJD) (JMA), 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 108 (2d Cir. 1992)). "Although the court can hold a hearing on damages in the context of default judgment, 'the decision of whether a hearing is necessary [is left] to the discretion of the district court.'" *Korzeniewski*, 2019 WL 312149, at *6 (citing *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)). Because Plaintiff has not requested a hearing and because Hernandez has failed to appear in this action for close to two years, this Court does not find a hearing necessary. *See id.*; *see also Reilly v. Plot Commerce*, No. 15-CV-5118 (PAE) (BCM), 2016 WL 6837895, at *5 (S.D.N.Y. Oct. 31, 2016) ("Since neither party has requested a hearing on the issue of damages, and since defendant did not submit any written materials, I have conducted the inquest based solely upon the materials submitted by plaintiff.").

"Under § 504(a) and (c)(1) of the Copyright Act, once liability for infringement has been established, a plaintiff can elect either actual or statutory damages." *Korzeniewski,* 2019 WL 312149, at *6 (citation omitted). Here, Plaintiff seeks actual damages. *See* Dkt. No. 56-1, at 6.

Under 17 U.S.C. § 504(b), a "copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are

attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b).   An award of actual damages pursuant to this section "undertakes to compensate the [copyright] owner for any harm he suffered by reason of the infringer's illegal act." *On Davis v. The Gap, Inc.*, 246 F.3d 152, 159 (2d Cir. 2001) (internal citations omitted).

Where the defendant's profits are derived from both infringing and non-infringing activities, not all the defendant's profits can be attributed to the infringement, and when apportioning profits, the benefit of the doubt in apportioning profits is given to the plaintiff.  *See Orgel v. Clark Boardman Co.*, 301 F.2d 119, 121-22 (2d Cir. 1962) ("In arriving at a figure every indulgence should be granted plaintiff in an attempt to arrive at a sum which is assuredly adequate.").  The plaintiff must provide a reasonable basis for its computation of actual damages, even though the calculation may only be approximate.  *U.S.A. Famous Original Ray's Licensing Corp. v. Tisi's Pizza and Pasta Inc.*, No. 09-CV-5517 (RMB) (AJP), 2009 WL 4351962, at *3 (S.D.N.Y. Dec. 1, 2009) (holding that personal observation and experience along with familiarity of the volume of business in the area was a "reasonable and appropriate" way to calculate the defendant's revenue); *see also Renna v. Queens Ledger/Greenpoint Star Inc.*, No. 17-CV-3378 (DRH) (SIL), 2019 WL 5458798, at *2 (E.D.N.Y. Oct. 2, 2019), *report and recommendation adopted*, 2019 WL 5457735 (E.D.N.Y. Oct. 24, 2019).

Here, Plaintiff requests judgment against Hernandez in the amount of $61,538.46.  *See* Dkt. No. 52-1, at 7; Dkt. No. 52-10.  Plaintiff has calculated this amount based on Hernandez's deposition testimony where he stated that he was paid $800,000 for the creation of the album Dummy Boy, which contains 13 songs (including the song Stoopid).  Dkt. No. 52-8, at 40. Plaintiff's total requested damages represents 1/13th of the overall profits of Dummy Boy, which

Plaintiff contends can be attributed to Hernandez's unauthorized use of the Drop in Stoopid.  *See* Dkt. No. 52-1, at 7.

The Court finds this calculation to be a reasonable apportionment of the profits and an acceptable computation of Plaintiff's actual damages.  *See Millennium TGA, Inc. v. Leon*, No. 12-CV-01360 (MKB), 2013 WL 5719079, at *1 (E.D.N.Y. Oct. 18, 2013) (accepting Plaintiff's requested damages based on approximated profits from Defendant's blog, on which Defendant infringed Plaintiff's audiovisual works and photosets); *Nature's Enterprises, Inc. v. Pearson*, No. 08-CV-8549 (JGK), 2010 WL 447377, at *8 (S.D.N.Y. Feb. 9, 2010) (concluding that damages based on the "known sales of infringing DVDs" was adequate); *Renna*, 2019 WL 5458798, at *2 ("some reasonable basis for computation has to be used, even though the calculation may only be approximate[.]" (citations omitted)).  As Plaintiff argues, "the infringing work was prominently featured in one of the thirteen songs on the album and giving the benefit of the doubt to the Plaintiff, allocating 1/13th of the infringers['] profits to Plaintiff is a reasonable basis for allocating actual damages."  Dkt. No. 58, at 2.  This Court agrees.

Accordingly, this Court respectfully recommends that Plaintiff is awarded $61,538.46 in damages.

## IX.   Attorneys' Fees

### A.     Plaintiff is Entitled to Attorneys' Fees

Plaintiff requests that Hernandez be required to pay Plaintiff's reasonable attorneys' fees of $24,750.  *See* Dkt. No. 58-1, at 2.

"There is no automatic right to an award of attorney's fees to prevailing parties in copyright cases.  *Stokes v. MilkChocolateNYC LLC*, 681 F. Supp. 3d 226, 243-44 (S.D.N.Y. 2023).  "Rather, in addition to costs, "the court may also award a reasonable attorney's fee to the prevailing party

as part of the costs." *Id.* at 243 (citing 17 U.S.C. § 505). "Attorney's fees thus may be awarded 'only as a matter of the court's discretion.'" *Id.* (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994)). In exercising its discretion, the court considers a number of nonexclusive factors, such as "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* (citing *Fogerty*, 510 U.S. at n.19); *accord Bryant v. Media Right Productions, Inc.*, 603 F.3d 135, 144 (2d Cir. 2010).

This Court respectfully recommends that Plaintiff, as the prevailing party, be awarded reasonable attorneys' fees. As Hernandez has failed to litigate this action, there are no defenses or claims for the Court to assess, "leaving only compensation and deterrence as factors for the Court to consider." *Whitehead v. Mix Unit, LLC*, No. 17-CV-9476 (VSB) (JLC), 2019 WL 384446, at *5 (S.D.N.Y. Jan. 31, 2019), *report and recommendation adopted*, 2019 WL 1746007 (S.D.N.Y. Apr. 18, 2019). The Court next turns to what fees are due to Plaintiff's counsel.

### B.    Reasonableness of Plaintiff's Counsel's Requested Hourly Rates

"The traditional approach to determining a fee award is the 'lodestar' calculation, which is the number of hours expended multiplied by a reasonable hourly rate. *Stokes*, 681 F. Supp. 3d at 244 (citing *Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007)). The Second Circuit has held that "the lodestar . . . creates a 'presumptively reasonable fee.'" *Millea v. Metro-North Railroad Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citations omitted). To arrive at a lodestar calculation, "[t]he party seeking an award of fees should submit evidence supporting the hours worked and rates claimed." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

26

### 1.   The Forum Rule

Courts in this Circuit employ the "forum rule," where "the hourly rates [in the] district in which the [ ] court sits" are presumptively reasonable, as well as on "evidence proffered by the parties." *Simmons v. N.Y. City Transit Auth.*, 575 F.3d 170, 174-76 (2d Cir. 2009) (recounting the history of the forum rule); *see also Parsons v. Bong Mines Ent. LLC*, No. 19-CV-813 (JMA) (AKT), 2021 WL 931506, at *12 (E.D.N.Y. Feb. 18, 2021) ("To determine reasonable hourly rates, the Court considers this Circuit's adherence to the forum rule, which states that a district court should generally use the prevailing hourly rates in the district where it sits."), *report and recommendation adopted*, 2021 WL 930259 (E.D.N.Y. Mar. 11, 2021); *Sass v. MTA Bus Co.*, 6 F. Supp. 3d 238, 260 (E.D.N.Y. 2014) ("In this Circuit, when calculating reasonable attorneys' fees, courts must presumptively apply the 'forum rule,' which provides that 'courts should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee.'" (citing *Simmons*, 575 F.3d at 174-75)).[3]

---

[3] While the Court is bound by the Second Circuit's forum rule as to hourly rates, *see Simmons*, 575 F.3d at 174, this Court notes the concerns raised by other courts in this Circuit, as summarized below:

> [T]he Court acknowledges that the hourly rates charged by attorneys with similar levels of experience in the Southern District of New York[], which is located less than two miles away from [the Eastern District of New York], [] are higher than those typically awarded in [the Eastern District]. The Court believes that from a financial perspective, the difference between practicing in [the Eastern District] as opposed to the Southern District [] is minimal.  In reality, attorneys practicing in [the Eastern District] also practice in the Southern District, and often have their offices in Manhattan, as Plaintiff's counsel does. It may be unreasonable to expect that those attorneys would charge their clients different hourly rates based on whether a case was brought in [the Eastern District] or the Southern District.  [] The court should make adjustments to the number of hours based on case-specific factors, including, for example, deductions for "excessive, redundant or otherwise unnecessary hours." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999); *see Nature's Enters., Inc. v. Pearson*, No. 08-CV-8549 (JGK), 2010 WL 447377, at *10 (S.D.N.Y. Feb. 9, 2010).

*HVT, Inc. v. Port Auth. of New York & New Jersey*, No. 15-CV-5867 (MKB) (VMS), 2018 WL 6079932, at *2 (E.D.N.Y. Nov. 21, 2018). Indeed, the Eastern and Southern Districts of New York are "linked together by numerous bridges, tunnels and highways; indeed, the two district courthouses are each

To determine the fees due to Plaintiff's counsel, the Court must ascertain the "presumptively reasonable fee" for the legal services rendered in this matter, that is, "what a reasonable client would be willing to pay[.]" *Masino v. Columbus Constr. Corp.*, No. 08-CV-1592 (RRM) (CLP), 2009 WL 2566956, at *6 (E.D.N.Y. Aug. 19, 2009) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183-84 (2d Cir. 2008)). "In determining the amount of attorneys' fees to award, the court sets a "reasonable hourly rate," bearing in mind all the case-specific variables; the court then uses that reasonable hourly rate to calculate the "presumptively reasonable fee" by multiplying the rate by the number of hours reasonably expended. *See HVT, Inc.*, 2018 WL 6079932, at *1 ("The presumptively reasonable fee analysis involves determining the reasonable hourly rate for each attorney and the reasonable number of hours expended, and multiplying the two figures together to obtain the presumptively reasonable fee award." (citations omitted)).

"In setting the reasonable hourly rate, the court is to consider the traditional factors first enumerated in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), abrogated on other grounds by *Blanchard v. Bergeron*, 489 U.S. 87, 92-93, 96 (1989):

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

---

juxtaposed to the Brooklyn Bridge, within an easy stroll from each other." *Luca v. Cnty. of Nassau*, 698 F. Supp. 2d 296, 300 (E.D.N.Y. 2010) (discussing the forum rule); *Gutman v. Klein*, No. 03-CV-1570 (BMC), 2009 WL 3296072, at *2 (E.D.N.Y. Oct. 13, 2009), *aff'd*, 515 F. App'x 8 (2d Cir. 2013) ("It may be that the concept of a geographically-based as opposed to case complexity-based lodestar will someday have as much relevance to the selection of an attorney as dinosaurs have to birds").

*HVT, Inc.*, 2018 WL 6079932, at *2 (citing *Arbor Hill*, 522 F.3d at 186 n.3).

"The party applying for fees must support the hourly rates it claims with, for example, evidence of counsel's expertise and prevailing market rates." *Gesualdi v. Bestech Transp., LLC*, No. 14-CV-1110 (JS) (ARL), 2022 WL 866853, at *2 (E.D.N.Y. 2022) (citations omitted). "Complex cases of long duration litigated by well-experienced counsel warrant a court to consider a comparatively high hourly rate, while less complex matters, *even if litigated by experienced counsel*, support a lower rate." *Cap. One, N.A. v. Auto Gallery Motors, LLC*, No. 16-CV-6534 (PKC) (SIL), 2020 WL 423422, at *3 (E.D.N.Y. Jan. 27, 2020) (quoting *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, No. 10-CV-2262 (DRH) (AYS), 2019 WL 2870721, at *6 (E.D.N.Y. June 18, 2019), *report and recommendation adopted*, 2019 WL 2869150 (E.D.N.Y. July 3, 2019) (emphasis added)).

Plaintiff has submitted summaries of the legal work performed by his counsel, W. Cooper Knowlton, who is a partner at the law firm Bergstein Flynn Knowlton & Pollina PLLC. *See* Dkt. No. 58-1. No other attorneys from Mr. Knowlton's firm worked on this matter. *See id.*[4] Mr. Knowlton billed approximately 33 hours in this matter, at a rate of $750.00 an hour, for a total of $24,750.00. *See* Dkt. No. 58-3.

The Eastern District of New York has held that "[i]n this district, hourly rates 'generally range from $300.00 to $450.00 for partner-level attorneys, and $200.00 to $325.00 for those with less experience.'" *Cidoni v. Woodhaven Ctr. of Care*, No. 21-CV-03654 (JMA) (JMW), 2023 WL 2465167, at *4 (E.D.N.Y. Mar. 10, 2023) (citing *Williamsburg Climbing Gym Co. LLC v. Ronit Realty LLC*, No. 20-CV-2073 (FB) (RML), 2023 WL 1072952, at *4 (E.D.N.Y. Jan. 9, 2023), *report and recommendation adopted*, 2023 WL 1070615 (E.D.N.Y. Jan. 27, 2023)). Higher rates

---

[4] Brandon Tesser is listed as being an attorney of record for Plaintiff on the docket, but no fees are sought on behalf of Mr. Tesser.

are approved where the party applying for fees supports the hourly rate with evidence such as counsel's extensive expertise, experience before the federal bar, and specialization required to litigate the matter. *Williamsburg Climbing Gym Co. LLC*, 2023 WL 1072952, at *4. Higher rates can also be approved upon a showing that a reasonable client could pay "out-of-district rates." *Allied 100, LLC v. Chadha*, No. 20-CV-03493 (AMD) (PK), 2021 WL 7184241, at *10 (E.D.N.Y. July 26, 2021).

"In copyright cases, courts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners" and "$200 to $325 for senior associates." *FNTV, LLC v. Starnes Media Grp. LLC*, No. 22-CV-4042 (HG) (PK), 2023 WL 7000848, at *7 (E.D.N.Y. Aug. 10, 2023), *report and recommendation adopted*, Text Order, dated September 1, 2023 ("The Court has reviewed the range of attorneys' fees for copyright cases and agrees with Judge Kuo that an hourly rate ranging from $300 to $450 is appropriate for lead counsel. [] Consistent with the 'need to deter the infringer and third parties from future infringement,' the Court finds that compensating counsel for their work in protecting copyrights contributes to the deterrent effect on future infringement. [] Accordingly, the Court finds that Plaintiff should be awarded attorneys' fees based on an hourly rate of $450.") (Gonzalez, J.); *see also Haker v. Tentree Int'l Inc.*, No. 20-CV-1499 (KAM) (RML), 2021 WL 3884195, at *6 (E.D.N.Y. Aug. 31, 2021) (collecting cases) (internal quotation marks and brackets omitted).

In *Arbor Hill*, the Second Circuit formulated a guidance on reasonableness to instruct assessment of fees by district courts:

> We now clarify that a district court may use an out-of-district hourly rate—or some rate in between the out-of-district rate sought and the rates charged by local attorneys—in calculating the presumptively reasonable fee if it is clear that a reasonable, paying client would have paid those higher rates. We presume, however, that a reasonable, paying client would in most cases hire counsel from within his district, or at least counsel whose rates are consistent with those charged

30

> locally. This presumption may be rebutted—albeit only in the unusual case—if the party wishing the district court to use a higher rate demonstrates that his or her retention of an out-of-district attorney was reasonable under the circumstances as they would be reckoned by a client paying the attorney's bill.

*Arbor Hill*, 522 F.3d at 191.

One such unusual case that may rebut the presumption outlined in *Arbor Hill* is in cases involving highly specialized and complex areas of law. *See, e.g., Maddaloni v. Pension Tr. Fund of Pension, Hospitalization & Benefit Plan of Elec. Indus.*, No. 19-CV-3146 (RPK) (ST), 2023 WL 7000885, at *6 (E.D.N.Y. Sept. 1, 2023), *report and recommendation adopted*, 2023 WL 6457756 (E.D.N.Y. Oct. 4, 2023). In *Maddaloni*, the court found it reasonable to apply the out-of-district rate requested by plaintiff—which was a rate typical in the Southern District of New York. *Id.* In reaching this conclusion, the *Maddaloni* court held that litigation under the Employee Retirement Income Security Act ("ERISA") is "a niche and highly specialized field" justifying "the assistance of specialized attorneys"—especially where "no lawyers from [the district] have ever been willing to take on this litigation." *Id.* (quoting *Frommert v. Conkright*, 223 F. Supp. 3d 140, 149 (W.D.N.Y. 2016)).

Here, there are no unique circumstances that would justify a drastic departure from the prevailing market rates in this district. Indeed, Plaintiff's fee application does not address the forum rule or "compare the requested rates to those found reasonable in the Eastern District." *Allied 100, LLC*, 2021 WL 7184241, at *10. Plaintiff also does not make a "'particularized showing' demonstrating 'the likelihood that the use of in-district counsel would have produced a substantially inferior result.'" *McDaniel v. Cty. Of Schenectady*, 595 F.3d 411, 421 n.6 (2d Cir. 2010). Plaintiff's fee application is also silent as to legal authority for the requested individual rates—especially as the requested fee award nearly doubles standard fee awards for complex commercial litigation in this District. Further, the complexity and difficulty of this case largely

stemmed from the thorny procedural history of this litigation—especially as this case ultimately concerned a straightforward application of copyright law.  *See Maddaloni,* 2023 WL 7000885, at *6; *Nat'l Env't Safety Co., Inc. v. Katz,* No. 18-CV-02161 (JMA) (GRB), 2019 WL 1994049, at *2 (E.D.N.Y. May 6, 2019) (reducing requested hourly rates in motion for default judgment involving breach of a promissory note); *cf. Stokes v. Hombres Lounge, Inc.,* No. 19-CV-3434 (LDH) (CLP), 2020 WL 9814097, at *8 (E.D.N.Y. Oct. 7, 2020) ("In awarding attorney's fees, the Court is guided by the fact that default actions are relatively simple legal matters, while taking into account the attorney's degree of skill and the Court's own experience dealing with similar claims.").

Accordingly, the Court will apply the forum rule to determine the reasonable rates Plaintiff's counsel.  This Court respectfully recommends that the requested rates be reduced for the reasons below.

### 2.      Plaintiff's Counsel's Requested Rate

Mr. Knowlton has been practicing law since graduating *cum laude* from the University of Michigan Law School in 2014.  *See* Dkt. No. 58-2.  Mr. Knowlton previously worked for a large law firm, where his practice focused on securities, antitrust, First Amendment, and general commercial and corporate cases.  *See id.*  As noted above, Mr. Knowlton employed a billing rate of $750 per hour.  *See* Dkt. No. 58-1 ¶ 8.

Nonetheless, with less than a decade of experience to date, Mr. Knowlton's rates figure substantially above even the highest rates awarded in this District for attorneys with specialized experience in complex matters.  *See Schwartz v. United States Drug Enf't Admin.,* No. 13-CV-5004 (CBA) (ST), 2019 WL 1299192, at *8-9 (E.D.N.Y. Mar. 1, 2019), *report and recommendation adopted*, 2019 WL 1299660 (E.D.N.Y. Mar. 21, 2019) (collecting cases

awarding hourly rates of $500 to $655 per hour for supervisory partners with specific subject-matter expertise and finding $500 to be a reasonable hourly rate for senior partners); *see, e.g., Emerson Elec. Co. v. Asset Mgmt. Assocs. of New York, Inc.*, No. 16-CV-1390 (PKC) (SIL), 2024 WL 2387406, at *3 (E.D.N.Y. May 23, 2024) (collecting cases); *Yanes v. Juan & Jon Inc.*, No. 19-CV-0201 (JS) (LGD), 2024 WL 1639932, at *1 (E.D.N.Y. Apr. 16, 2024) (explaining that "Courts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for legal support staff in FLSA cases." (citations omitted)); *Cidoni*, 2023 WL 2465167, at *4; *Value Wholesale, Inc. v. KB Ins. Co.*, No. 18-CV-5887 (KAM) (SMG), 2020 WL 6393016, at *5 (E.D.N.Y. Nov. 2, 2020), *reconsideration denied*, 2020 WL 7625411 (E.D.N.Y. Dec. 22, 2020) (awarding $550 for senior partners, "slightly higher than the rates often awarded under fee-shifting statutes," because such rates were "not unreasonable rates for a paying client to incur in connection with a complex trademark infringement suit brought by a sophisticated medical device company."); *Nat'l Env't Safety Co., Inc.* 2019 WL 1994049, at *2 (awarding rates of $500 to $600 for partners on a motion for default judgment involving a breach of a promissory note claim); *Allied 100, LLC*, 2021 WL 7184241, at *11 (awarding an hourly rate of $550.00 to partners with 20 years of experience where the breach of contract action involved an international dispute, overseas parties, and large contracts).

Moreover, Plaintiff filed *three* motions for default judgment in this case. As noted above, on January 17, 2024, Plaintiff filed a motion for default judgment against Hernandez. *See* Dkt. No. 51. The next day, on January 18, 2024, the Court ordered Plaintiff to file an amended motion that complies with Local Rules 7.1 and 55.2(b) and the SCRA. *See* Jan. 18, 2024 Dkt. Order. On January 22, 2024, Plaintiff filed a second motion for default judgment. *See* Dkt. No. 52. On April

22, 2024, the undersigned issued a Report and Recommendation that Plaintiff's motion be denied because Plaintiff had not established compliance with the SCRA. *See* Dkt. No. 53. On May 28, 2024, the Court adopted the Report and Recommendation and ordered Plaintiff to "file a new motion for a default judgment that addresses **all** deficiencies noted in Judge Marutollo's Report & Recommendation" by June 11, 2024. *See* May 28, 2024 Dkt. Order (emphasis in original).

On June 11, 2024, Plaintiff filed its third motion for default judgment. *See* Dkt. No. 56. But even that third motion was, on its face deficient, as the Court ordered Plaintiff, on July 1, 2024, to specify if he is seeking attorneys' fees in this action and, if so, to provide support for such an assertion. *See* July 1, 2024 Dkt. Order.

Thus, the requested rate of $750 seems wholly inappropriate in this case. Further, it is simply unreasonable to award Plaintiff his requested fee of $3,000 (Dkt. No. 58-3, at 2) for drafting his initial motion for default judgment on January 14, 2024, especially when the motion was so riddled with procedural errors that Plaintiff had to move two more times for default judgment. *See Garcia v. Francis Gen. Constr. Inc.*, No. 20-CV-4323 (JPC), 2022 WL 2698434, at *8 (S.D.N.Y. July 12, 2022) (reducing the attorney's fee award by one-third where "the Court originally rejected the default judgment papers because of counsel's errors").

Accordingly, in light of the authority in this District, this Court finds an hourly rate of $350 reasonable for Mr. Knowlton. *See FNTV, LLC*, 2023 WL 7000848, at *7 (awarding a $350 attorney's fee rate in a default judgment action to an attorney who was estimated to have served as counsel of record on behalf of copyright holders in over 500 infringement actions and who had over twenty years of experience in the field of intellectual property law); *see Simons v. Brigade USA Inc.*, No. 21-CV-5311 (RPK) (SJB), 2022 WL 4115369, at *8 (E.D.N.Y. July 27, 2022) (finding a $350.00 requested hourly rate as reasonable under similar circumstances).

34

Accordingly, this Court respectfully recommends that Plaintiff be awarded attorney's fees based on an hourly rate of $350 for Mr. Knowlton's services.

### C.      Reasonableness of Hours Billed

Attorneys must submit contemporaneous records with their fee applications to document the hours reasonably billed.  *See Scott v. City of New York*, 626 F.3d 130, 133 (2d Cir. 2010); *Hershkowitz v. ARstrat, LLC*, No. 21-CV-6093 (EK) (TAM), 2023 WL 2311429, at *2 (E.D.N.Y. Jan. 25, 2023), *report and recommendation adopted*, 2023 WL 2306071 (E.D.N.Y. Feb. 28, 2023) ("With very limited exceptions, contemporaneous time records are a prerequisite for attorney's fees in this Circuit." (citations omitted)).

In determining a reasonable number of hours, district courts should "exclude excessive, redundant or otherwise unnecessary hours." *Quarantino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999).   Courts, however, "need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011).  If a fee application has "such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (quotations and citation omitted).

Here, Plaintiff has submitted the contemporaneous time and billing records for this Court's review.  *See* Dkt. No. 58-3.  This Court has closely reviewed the time entries and, notwithstanding the issues raised above regarding Plaintiff's faulty motions for default judgment, they appear reasonable.  This Court also reviewed the billing records for "block-billing"—a practiced "frowned upon [] since it amounts to "the lumping together of discrete tasks with others that are not clearly defined, which makes it difficult for the court to allocate time to individual activities in order to gauge the reasonableness of time expended on each activity," *Bozdogan v. 23 Ludlam Fuel, Inc.*,

No. 16-CV-1053 (JMW), 2022 WL 17987044, at *4 (E.D.N.Y. Dec. 29, 2022) (citing *Douvon v. New York Medical Health Care, P.C.*, 49 F. Supp. 3d 328, 350 (E.D.N.Y. 2014))—and found that the records show Plaintiff's counsel engaging in discrete tasks.

### D.    Reasonableness of the Requested Fee Award

To arrive at the presumptively reasonable fee, once the Court determines the reasonable hourly rate, it multiplies that rate by the reasonable number of hours expended. *See Masino*, 2009 WL 2566956, at *7-8. In light of the above, this Court recommends that Plaintiff be awarded $11,550 in attorneys' fees, comprised of 33 hours multiplied by $350.

Additionally, as Plaintiff does not seek any costs in this action, the Court does not address whether Plaintiff is entitled to costs herein.

### X.    <u>Conclusion</u>

Accordingly, this Court respectfully recommends that Plaintiff's motion for default judgment be granted, except as to the amount of attorneys' fees requested.

A copy of this Report and Recommendation is being electronically served on counsel. This Court directs Plaintiff's counsel to serve a copy of this Report and Recommendation by overnight mail and first-class mail to Defendant Hernandez at the below address:

> Daniel Hernandez
> 80 Halley Drive
> Pomona, New York 10970

A copy shall also be emailed to Oscar.hernandez1994@gmail.com. Proof of service shall be filed on ECF by July 29, 2024.

Any objections to this Report and Recommendation must be filed within 14 days after service of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). *See also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days). Any requests for an extension

of time for filing objections must be directed to Judge Gonzalez.  Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010); *Kotlyarsky v. United States Dep't of Just.*, No. 22-2750, 2023 WL 7648618 (2d Cir. Nov. 15, 2023); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:        Brooklyn, New York
              July 25, 2024

                                        **SO ORDERED.**


                                         */s/ Joseph A. Marutollo*
                                        JOSEPH A. MARUTOLLO
                                        United States Magistrate Judge